UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION

No. 4:25-CV-204-M

| | |
|---|---|
| DIANE SUSIE PAGE,<br><br>Plaintiff,<br><br>v.<br><br>ELEKTA, INC.,<br><br>Defendant. | MEMORANDUM AND RECOMMENDATION |

This matter is before the court on Defendant Elekta, Inc.'s ("Elekta") motion to dismiss, pursuant to Fed. R. Civ. P 12(b)(6). [DE-11]. Plaintiff Diane Susie Page ("Page") opposes the motion. [DE-18]. The motion is ripe and has been referred to the undersigned for memorandum and recommendation. *See* Jan. 14, 2026 Text Order. For the reasons stated below, it is recommended that the motion to dismiss be allowed.

## I. Background

On September 12, 2025, Page filed a complaint in Martin County Superior Court against Elekta alleging she was injured by excess radiation exposure during breast cancer treatment due to a defect in software manufactured by Elekta. [DE-1-2] ¶¶ 7–9. Page asserted claims for negligence, negligence (failure to warn), and breach of implied warranty of merchantability. *Id.* ¶¶ 14–30. On October 24, 2025, Elekta removed the case to this court based on diversity jurisdiction under 28 U.S.C. §§ 1332(a) and 1441(a). [DE-1] ¶ 13. After receiving an extension of time, Elekta filed contemporaneously an answer, [DE-10], and the instant motion to dismiss for failure to state a claim, [DE-11].

## II. Standard of Review

A motion to dismiss under Rule 12(b)(6) tests the complaint's legal and factual sufficiency. *See Ashcroft v. Iqbal*, 556 U.S. 662, 677–80 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554–63 (2007); *Coleman v. Md. Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010), *aff'd*, 566 U.S. 30 (2012); *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008). To withstand a Rule 12(b)(6) motion, a pleading "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570); *Giarratano*, 521 F.3d at 302. In considering the motion, the court must construe the facts and reasonable inferences "in the light most favorable to the [nonmoving party]." *Massey v. Ojaniit*, 759 F.3d 343, 352 (4th Cir. 2014). A court need not accept as true a complaint's legal conclusions, "unwarranted inferences, unreasonable conclusions, or arguments." *Giarratano*, 521 F.3d at 302; *see Iqbal*, 556 U.S. at 678–79. Rather, a plaintiff's allegations must "nudge[] [his] claims," *Twombly*, 550 U.S. at 570, beyond the realm of "mere possibility" into "plausibility," *Iqbal*, 556 U.S. at 678–79.

## III. Discussion

The relevant facts alleged by Page are as follows. Page was diagnosed with right breast cancer in 2021. Compl. [DE-1-2] ¶ 6. Between August 9 and 13, 2021, she received adjuvant radiation treatment using Accelerated Partial Breast Irradiation (APBI) with SAVI Brachytherapy delivered with the Oncentra Brachy software manufactured by Elekta. *Id.* ¶¶ 7–8. Page was exposed to excess radiation to her skin and surrounding tissue due to a malfunction in the Oncentra software's dose distribution calculation, and she suffered radiation dermatitis, radiation burns, and permanent tissue injury, as well as ongoing pain, disfigurement, and medical complications. *Id.* ¶¶ 8–9. In September 2021, Elekta issued a Field Safety Notice acknowledging a design problem

in the Oncentra Brachy software resulting in dose delivery at unintended locations, including the patient's skin. *Id.* ¶ 10. Page did not discover that Elekta's software caused her injury until she obtained records on May 30, 2025, pursuant to response to a subpoena issued in a prior lawsuit against the medical provider. *Id.* ¶ 12. Page claims that her injury resulted from Elekta's negligent design and manufacture of the Oncentra Brachy software, Elekta failed to provide adequate warnings regarding the risk of radiation overdose, and the software was not fit for its intended use, as it contained defects that made it unreasonably dangerous to patients such as Page. *Id.* ¶¶ 14–30.

**a. Statute of Limitations**

Elekta argues that Page's claims are barred by North Carolina's three-year statute of limitations for negligence and breach of warranty claims, because she did not file her complaint until approximately four years after she suffered the radiation burns allegedly caused by the Oncentra Brachy software malfunction. Def.'s Mem. [DE-12] at 3. Page opposes dismissal based on the discovery rule and argues that she timely brought her claims within four months of receiving information that Elekta's wrongdoing caused her injury. Pl.'s Resp. [DE-18] at 3–6. Elekta counters that under the discovery rule the cause of action accrued when Page became aware of her injuries rather than when she learned of the alleged defect in the Oncentra Brachy software, so the claims are time barred. Def.'s Mem. [DE-12] at 4–6.

"In North Carolina, the applicable statute of limitations for claims involving negligence for personal injury . . . is three years, which 'shall not accrue until bodily harm to the claimant . . . becomes apparent or ought reasonably to have become apparent to the claimant, whichever event first occurs.'" *Wilson v. C.R. Bard, Inc.*, No. 5:19-CV-00567-M, 2020 WL 2574652, at *4 (E.D.N.C. May 21, 2020) (quoting *Lord v. Customized Consulting Specialty, Inc.*, 182 N.C. App.

635, 643, 643 S.E.2d 28, 33 (2007) (quoting N.C. Gen. Stat. § 1-52(16)). "The statute of limitations for breach of implied warranty claims where bodily injury to the plaintiff is an essential element of the claim is the three-year period contained in N.C. Gen. Stat. § 1–52(1)." *Driggers v. Sofamor, S.N.C.*, 44 F. Supp. 2d 760, 767 (M.D.N.C. 1998) (citing *Smith v. Cessna Aircraft Co.*, 571 F. Supp. 433, 436–37 (M.D.N.C.1983)). The court in *Wilson* explained the operation of the discovery rule:

> North Carolina's discovery rule only tolls the three-year statute of limitations applicable to Plaintiff's claims "until bodily harm to the claimant . . . becomes apparent or ought reasonably to have become apparent to the claimant[.]" N.C. Gen. Stat. § 1-52(16). Thus, under the plain terms of N.C. Gen. Stat. § 1-52(16), it is the appearance of the "bodily harm"—rather than Plaintiff's attribution of that harm's cause—that starts the clock. See *Pembee Mfg. Corp. v. Cape Fear Constr. Co.*, 313 N.C. 488, 493, 329 S.E.2d 350, 354 (1985) ("as soon as the injury becomes apparent to the claimant or should reasonably become apparent, the cause of action is complete and the limitation period begins to run." (emphasis added)).

2020 WL 2574652, at *6. Application of the discovery rule in the present case does not save Page's time-barred claims.

Page alleges that she suffered radiation dermatitis, radiation burns, and permanent tissue injury as a result of receiving excess radiation exposure to her skin during her cancer treatment that took place between August 9 and 13, 2021. Compl. [DE-1-2] ¶¶ 7–9. Page makes no allegations to support an inference that her injuries were not apparent at the time of her treatment in August 2021, but rather alleges that she "did not discover, and could not with reasonable diligence have discovered, that Elekta's defective software was the cause of her injuries until within three years prior to the filing of this action." *Id.* ¶ 12. As the court explained in *Wilson*, a pelvic mesh products liability case, "[t]he question of when Plaintiff attributed her injuries to Defendant's devices" is not material in assessing whether the discovery rule tolls the three-year statute of limitations applicable to the plaintiff's claims. *Wilson*, 2020 WL 2574652, at *6. The

relevant question is when the "bodily harm to the claimant . . . becomes apparent or ought reasonably to have become apparent to the claimant." *Id.* at *4 (quoting N.C. Gen. Stat. § 1-52(16)).

Page cites *Black v. Littlejohn,* 312 N.C. 626, 325 S.E.2d 469 (1985) for the proposition that "the statute [of limitations] does not begin to run until plaintiff discovers, or in the exercise of reasonable care, should have discovered, that [she] was injured *as a result of defendant's wrongdoing*." Pl.'s Resp. [DE-18] at 4 (emphasis added) (quoting *Black*, 312 N.C. at 642 (citing *Lewey v. Frick Coke Co.*, 166 Pa. 536, 31 A. 261 (1895) (one of the earliest reported decisions judicially adopting the discovery rule))). But the *Black* case is materially distinguishable from this case because it interpreted a different statute, N.C. Gen. Stat. § 1-15(c), which applies to medical malpractice claims. *See Williams v. Olympus Am., Inc.*, No. 1:17CV98, 2017 WL 2399332, at *3 (M.D.N.C. June 1, 2017) (applying North Carolina statute of limitations for negligence and breach of warranty claims, concluding that "Plaintiff's learning of additional facts about his injury, *including the potential tortfeasor*, is immaterial as to when he did, in fact, discover the physical injury," and distinguishing *Black* on the basis that "the North Carolina Supreme Court appear[ed] to limit its holding to medical malpractice claims applying N.C. Gen. Stat. § 1-15(c).") (emphasis added); *Soderlund v. Kuch*, 143 N.C. App. 361, 369–70, 546 S.E.2d 632, 638 (2001) (finding § 1-52(16) to be inapplicable where the plaintiff's injuries were not latent and distinguishing *Black* because it was "analyzed under § 1-15(c), the statute of limitations applicable to medical malpractice claims"). Accordingly, because Page filed her complaint in state court on September 12, 2025, more than three years after her injuries became apparent to her, the negligence and breach of warranty claims are time barred.

### b. Statute of Repose

Elekta alternatively argues that, if Page's claims are not time barred, she failed to properly plead the statue of repose. Def.'s Mem. [DE-12] at 6–7. Page contends that this legal issue turns on discoverable facts and is more appropriate for summary judgment determination. Pl.'s Resp. [DE-18] at 6.

North Carolina has a twelve-year statute of repose that begins to run on "the date of initial purchase for use or consumption." *Hill v. PSAN PI/WD Tr.*, No. 5:25-CV-565-D, 2026 WL 1398782, at *5 (E.D.N.C. May 14, 2026) (quoting N.C. Gen. Stat. § 1-46.1(1) ("No action for the recovery of damages for personal injury, death, or damage to property based upon or arising out of any alleged defect or any failure in relation to a product shall be brought more than 12 years after the date of initial purchase for use or consumption.")). The North Carolina Court of Appeals has instructed that,

> it is generally inappropriate to grant a defendant's Rule 12(b)(6) motion to dismiss a complaint merely because it failed to allege facts showing that it was filed within the applicable statute of repose. A Rule 12(b)(6) dismissal based on the statute of repose would only be appropriate if the complaint otherwise alleges facts conclusively showing that it was not filed within the applicable statute of repose.

*Puma Biotechnology, Inc. v. Hedrick Gardner Kincheloe & Garofalo, L.L.P.*, 300 N.C. App. 397, 402, 921 S.E.2d 562, 568 (2025) (quoting *Gaston Cnty. Bd. of Educ. v. Shelco, LLC*, 2022-NCCOA-550, 285 N.C. App. 80, 84, 877 S.E.2d 316, 319–20 (2022)). It is a plaintiff's burden to prove, i.e., to present evidence at summary judgment or at trial—not to plead—that a claim was filed within the repose period. *Gaston Cnty.*, 285 N.C. App. at 84, 877 S.E.2d at 319 (citations omitted). Page's complaint does not allege facts that conclusively demonstrate her claims are barred by the twelve-year statute of repose. Accordingly, should the court reach this issue, it is recommended that the motion to dismiss for failure to adequately plead the statute of repose be

denied.

### c. Lack of Contractual Privity

Elekta alternatively argues that, if Page's breach of implied warranty of merchantability claim is not time barred, it fails for lack of contractual privity. Def.'s Mem. [DE-12] at 8–12. Page takes no position on this issue. Pl.'s Resp. [DE-18] at 6.

A claim for breach of implied warranty of merchantability under North Carolina law consists of four elements: "(1) that the goods bought and sold were subject to an implied warranty of merchantability; (2) that the goods did not comply with the warranty in that the goods were defective at the time of sale; (3) that his injury was due to the defective nature of the goods; and (4) that damages were suffered as a result." *Teague v. Johnson & Johnson, Inc.*, 578 F. Supp. 3d 743, 751 (E.D.N.C. 2022) (quoting *DeWitt v. Eveready Battery Co.*, 355 N.C. 672, 683, 565 S.E.2d 140, 147 (2002)). The North Carolina common law requires privity of contract for an implied warranty claim, but under "North Carolina's Products Liability Act, N.C. Gen. Stat. 99B-1 et seq., 'privity is not required' where 'claimant . . . is a buyer, as defined in the Uniform Commercial Code, of the product involved,' and he or she brings 'a product liability action directly against the manufacturer of the product involved for breach of implied warranty.'" *Id.* at 751–52 (quoting *Bernick v. Jurden*, 306 N.C. 435, 449 & n.8, 293 S.E.2d 405 (1982) (quoting N.C. Gen. Stat. § 99B-2(b))). Under the UCC, a "buyer" is "a person who buys or contracts to buy goods," N.C. Gen. Stat. § 25-2-103(1)(a), and "goods" include "all things (including specially manufactured goods) which are movable at the time of identification to the contract for sale," *id.* § 25-2-105(a).

In *Teague*, a pelvic mesh case against a manufacturer for, among other claims, breach of implied warranty of merchantability, the court explained that "generally 'a physician is neither a merchant nor a seller of goods under the [Uniform Commercial Code],' [so] no reasonable

inference arises from the complaint that plaintiff was a 'a buyer, as defined in the Uniform Commercial Code, of the product involved[.]'" 578 F. Supp. 3d at 752 (first quoting *Preston v. Thompson*, 53 N.C. App. 290, 296, 280 S.E.2d 780 (1981), then quoting N.C. Gen. Stat. § 99B-2(b)). The court dismissed Teague's claim for lack of privity because the allegation that she and/or her physicians were in privity with defendants was a legal conclusion, and the plaintiff had provided no other relevant factual allegations in the complaint. *Id.* Here, Page alleges no facts from which the court found infer that she was in privity with Elekta or that the "buyer" exception applies. Accordingly, lack of privity provides an alternative ground for dismissing Page's breach of implied warranty of merchantability claim.

## IV. Conclusion

For the reasons stated above, it is recommended that the motion to dismiss be allowed.

IT IS DIRECTED that a copy of this Memorandum and Recommendation be served on the parties or, if represented, their counsel. Each party shall have until **July 30, 2026** to file written objections to the Memorandum and Recommendation. The presiding district judge must conduct his or her own review (that is, make a de novo determination) of those portions of the Memorandum and Recommendation to which objection is properly made and may accept, reject, or modify the determinations in the Memorandum and Recommendation; receive further evidence; or return the matter to the magistrate judge with instructions. *See, e.g.*, 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3); Local Civ. R. 1.1 (permitting modification of deadlines specified in local rules), 72.4(b), E.D.N.C.

**If you do not file written objections to the Memorandum and Recommendation by the foregoing deadline, you will be giving up the right to review of the Memorandum and Recommendation by the presiding district judge as described above, and the presiding**

**district judge may enter an order or judgment based on the Memorandum and Recommendation without such review. In addition, your failure to file written objections by the foregoing deadline will bar you from appealing to the Court of Appeals from an order or judgment of the presiding district judge based on the Memorandum and Recommendation.** ***See Wright v. Collins*, 766 F.2d 841, 846-47 (4th Cir. 1985).**

This the 16 day of July, 2026.

Robert B. Jones, Jr.
United States Magistrate Judge